## DIMMICK and another VS. THE MILWAUKEE AND ST. PAUL RAILWAY COMPANY.

In an action to recover from the defendant, as a bailee for hire, the value of goods alleged to have been lost through its negligence, the court did not err in instructing the jury as follows : " If the goods came over defendant's road, and were received by defendant at its depot at B. D., and if the plaintiffs were thereupon notified of their arrival, and requested of defendant's agent at B. D. the privilege of leaving the goods in the depot building for a few days until he could get them away, and if defendant had fastened up in a public place in the depot for a long time before the loss happened, a notice as follows : " Storage Regulations. Agents will immediately notify consignees of the arrival of goods. Property must be removed within two days after it is unloaded from the cars. If not so removed, storage will be charged at the rate named. [Here followed a statement of the rates of storage.] The company will be liable only as warehousemen for property remaining in their freight depots ; they will not be liable for loss or damage to such property by fire"—and if this storage regulation was the rule of the company at the time this loss happened ; then, if it was not agreed between plaintiff and defendant that the goods were to be stored free, for the whole time they were left in the depot, the defendant was entitled to charge for storage according to the published rates in the notice, and was a bailee for hire."

Nor was it error for the court in such a case to refuse to instruct the jury that said printed notice could not be considered as creating a contract between the plaintiffs and defendant for the storage of the goods, until it should appear that the plaintiffs knew of the said notice and acquiesced in its terms.

Evidence of various acts of robbery and theft committed in the village where defendant's depot was located, was admitted apparently for the purpose of showing that the defendant, as bailee for hire of goods in said depot, was bound to unusual care in guarding against theft and robbery ; but the evidence did not show any unusual liability to loss from these causes in said village as compared with other villages. The court, in its instructions to the jury, made no reference to this evidence, but simply charged that the defendant, if a bailee for hire, was bound to ordinary care,—such care as a prudent man in that locality would generally exercise in respect to things of a like nature. *Held,* that the defendant was not entitled to a new trial by reason of the admission of the evidence.

APPEAL from the Circuit Court for *Dodge* County.

This action was brought to recover the value of goods of the plaintiffs, stored in the depot of the defendant at Beaver Dam, and alleged to have been lost to the plaintiffs through the defendant's negligence. The complaint alleges that defendant undertook to safely store the goods in consideration of

a reasonable compensation. The answer denies, upon information and belief, every allegation of the complaint not specifically admitted, and does not specifically admit the contract of storage, as alleged. It also specifically denies the alleged negligence.

On the question whether the bailment was gratuitous or for hire, the plaintiffs' testimony on the trial tended to show that the boxes containing the goods in question, with others, arrived on the 9th or 10th of September, 1863 ; that the plaintiffs were duly notified of their arrival ; that the goods were suffered to remain in the depot for ten or twelve days; that on the 21st or 22d of September, the boxes were found to have been opened, and the goods in question abstracted ; and that the following notice was kept hanging in the office of the station agent of the defendant at the time said goods were at the depot, and for many months previous: "Storage Regulations. Agents will immediately notify consignees, personally or by mail, of the arrival of goods. Property must be removed within two days after it is unloaded from the cars at the place of delivery. If not removed, storage will be charged at the rate named, or, in the option of the company, it will be transferred to a private warehouse, and stored at the expense and risk of the owners. [Here followed the rates of storage.] The company will be liable only as warehouse men for property remaining in their freight depots. They will not be liable for loss or damage to such property by fire."—In the bill sent the plaintiffs by defendant for its charges on the goods, $3.50 was charged for storage, and the station agent of defendant at Beaver Dam, as a witness for the plaintiffs, testified that said notice was "the regulation they worked under in September, 1863." Said station agent, as a witness for defendant, testified : "I notified the plaintiffs of the arrival of the goods. The next day he asked me if they would be in the way to put them in the depot building; if not, he would like to leave them there three or four days, as his store building was not finished. I told him

JUNE TERM, 1864.　　473

Dimmick et al. vs. The Milwaukee & St. Paul Railway Co.

he could do so, as they would not be in the way at present. Saw him again from seven to ten days after this; asked him how long his four days were; said I thought they were lengthy; he said yes, but his building was not finished yet. I told him I would like to have him get them away as soon as he could conveniently. He said he thought he could get them away that week. This was some three or four days before the goods were taken." On cross-examination, witness said: "I make returns of money received for storage. I charged plaintiffs for storage of their goods; think I put charge for storage on plaintiffs' bill." On direct examination, the witness further testified: "The plaintiffs have never paid any storage on these goods. It has not been the custom or usage of the defendant to charge storage in Beaver Dam to parties who are in the constant habit of receiving goods, upon the terms and conditions mentioned in the printed notice headed 'Storage Regulations.' It has not been its custom to make charges for storage to regular customers, if their goods were not removed within two days, or a reasonable time after the two days." *Question:* "What was the object of the company in giving that printed notice?" Ruled out. Defendant then offered to prove that said notice was given for the purpose of inducing persons shipping goods over defendant's road, to remove them immediately upon their arrival, or within the two days, and not for the purpose of holding the company out to the public as desiring to receive goods for storage; but the court ruled out the evidence. The testimony bearing upon the question of negligence is sufficiently stated in the opinion of this court.—At the request of the plaintiffs, the court instructed the jury as follows: "If you find that the goods came over defendant's road and were received into its depot at Beaver Dam, and that the plaintiffs were thereupon notified of their arrival, and that they requested of the defendant's agent at Beaver Dam the privilege of leaving the goods in the depot building for a few days until plaintiffs could get them away; and also that defendant had

fastened up in a public place in their depot, for a long time before the loss happened, a notice in the following words [reciting the notice above mentioned], and if this storage regulation was the rule of the company at the time this loss happened; then, if the jury do not find that it was agreed between plaintiffs and defendant that the goods were to be stored free for the whole time they were left in the depot, the defendant was entitled to charge for storage according to the published rates in the notice, and was a bailee for hire." The defendant asked the following instruction, which was refused: "The printed notice headed 'Storage Regulations' cannot be considered as creating a contract between the plaintiffs and the defendant for the storage of the goods, until it shall appear from the evidence that the plaintiffs knew of said notice and acquiesced in its terms."—The court also gave certain instructions (to which no exception was taken) relative to the degree of care to which the defendant was to be held, if a bailee for hire; but these are sufficiently stated in the opinion of the court. Verdict for the plaintiff; new trial refused; and judgment upon the verdict; from which the defendant appealed.

*Finches, Lynde & Miller*, for appellant.

*Smith & Ordway*, for respondents.

*By the Court*, COLE, J. Whether the bailment was gratuitous or not, was a question which the court fairly submitted to the jury upon the evidence. For the court says: "If you find from the evidence that the defendant was in possession of the goods, keeping them for hire, that is, entitled to pay from the plaintiffs for storing them, then it is a lucrative contract, not a gratuitous undertaking, on the part of the defendant, and the defendant is held to ordinary care of the goods, and is answerable for ordinary neglect." There was testimony which tended to show that the company was accustomed to charge storage upon goods which were not removed from the freight depot within two days after they were unloaded from its cars.

Such were the conditions contained in the printed regulations of the company, which, it appears, were hung up for inspection in the office of the station agent at Beaver Dam, and under which the agent said he was working when the goods in controversy were transported over the road and deposited in the depot of the company. These printed regulations had been offered in evidence, and were before the jury, as well as the testimony of the station agent, Wilcox, who stated that he charged the plaintiffs storage on their goods, and put the charge upon their bill. From this testimony the jury might well conclude that the goods were not left in the depot or warehouse for the special use and accommodation of the owners, but that the company was to derive a benefit from the storage, and was therefore chargeable with the obligation and duty of a bailee for hire. At all events, the whole subject was submitted to the consideration of the jury, to say whether the company, in keeping the goods in its warehouse for several days after they had been unloaded from its cars, was performing a gratuitous service, or whether it was to receive compensation for the storage. We see no error in this of which the company can complain.

Upon the question of negligence, the court told the jury, in substance, that if they found that the company was keeping the goods for hire, then it was bound to exercise ordinary care and diligence in respect to them, or that it should exercise that care which men of common prudence generally bestow upon their own property similarly situated, and was only liable in case it failed to perform this duty. This, we suppose, was stating correctly the principles of law applicable to the question of negligence. The goods in this case were stolen from boxes while they were in the warehouse of the company. The warehouse was a large wooden building, standing upon blocks three or four feet from the ground. There was no planking around these blocks, except in front, and persons, by stooping some, could go under and walk about beneath the floor. It

appears that there were two short plank loose in the floor, and had been for a long time, to the knowledge of the agents of the company, through which the thief probably entered the building. And the respondents claimed that the company was guilty of a want of ordinary care and diligence in permitting the floor to remain in this condition with no night watchman about the building. Hence the court told the jury that the company would not be liable for the loss if its agents had exercised that degree of care and diligence in keeping them which a man of ordinary prudence would use in respect to his own property of a like value. They were to determine, taking all the circumstances together, whether there was any proof of negligence or want of proper care on the part of the company in leaving the plank of the floor loose, through or by means of which thieves and burglars might enter the warehouse and steal merchandize there deposited.

On the trial, a witness was asked whether, prior to the loss of these goods, a number of thefts and robberies had not been committed in the city of Beaver Dam and vicinity. These questions were all objected to, and it is now contended that the court erred in permitting them to be answered. The object of this testimony undoubtedly was, to show that, in consequence of these thefts and robberies, more than common or ordinary care and diligence should have been exercised in keeping goods in the warehouse. We agree fully with the counsel for the appellant in the remark that the testimony did not show, or tend to show, that robbers were known to frequent Beaver Dam more than any other neighborhood or locality in the state. At most the testimony on this point was impertinent, and it was in effect entirely thrown out of consideration by the court when it came to charge the jury. The jury was not told that it was the duty of the company to exercise any greater vigilance or care in consequence of these robberies having been committed there. On the contrary, the jury were clearly instructed that the company was excused if it only exercised that ordinary

care which men of common prudence would exercise about their property similarly circumstanced. Under these instructions, it was not possible for the company to be prejudiced by such testimony. If the company was not called upon to exercise any higher degree of diligence in consequence of these robberies, how could it be injuriously affected by the testimony in respect to them? Manifestly it could not be.

We think the question of negligence was fairly submitted to the jury under proper instructions.

The judgment of the circuit court is therefore affirmed.